UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(TRENTON VICINAGE)

| | | |
|---|---|---|
| **JOYCE PERRY WHITE** | ) | **CIVIL ACTION NO.:** |
| **TAHEERAH SMART and** | ) | **3:09-CV-05408-FLW- LHG** |
| **GEORGE DANBURY,** | ) | |
| **Individually and on Behalf of Those** | ) | |
| **Similarly Situated,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **RICK BUS COMPANY,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**DEFENDANT'S REPLY TO PLAINTIFFS' OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS
AND
DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS'
MOTION FOR CLASS CERTIFICATION, CONDITIONAL CERTIFICATION, AND
FOR AN ORDER COMPELLING DEFENDANT TO PRODUCE DISCOVERY**

The Plaintiffs, Joyce Perry White, Taheerah Smart and George Danbury, filed a Class

Action Complaint ("Complaint") in the above-referenced matter on behalf of "similarly situated"

individuals, against the sole Defendant, Rick Bus Company ("Defendant"), a student

transportation company for violation of the New Jersey State Wage and Hour Law ("NJWPL"),

N.J.S.A. 34:11-4.4 and 34:11-56a1 and the Fair Labor Standards Act ("FLSA") 29 U.S.C.

Section 201, et seq.

Class actions have two primary purposes: (1) to accomplish judicial economy by

avoiding multiple suits, and (2) to protect rights of persons who might not be able to present

claims on an individual basis. *Crown , Cork & Seal Co. v. Parker*, 462 U.S. 345, 103 S.Ct. 2392,

76 L.Ed. 2d 628 (1983). A class action may be certified if the trial court is satisfied after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied. *General Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed. 2d 740 (1982).

Pursuant to Fed. R. Civ. P. 12(b)(6) or, in the alternative, 12(f), the Defendant moved for an Order dismissing or otherwise striking all class action allegations contained in the Complaint because the Complaint itself demonstrates that the requirements for maintaining a class action cannot be met. *See* Fed. R. Civ. P. 23.

## PRELIMINARY STATEMENT

Defendant will rely on the Preliminary Statement submitted with its Motion to Dismiss, previously filed with this Honorable Court.

## LEGAL ARGUMENT

### POINT ONE

**PLAINTIFFS CANNOT SATISFY THE PREREQUISITES OF FED.R.CIV.P. 23(A) AND (B), THEREFORE ITS MOTION FOR CLASS CERTIFICATION AND SUB-CLASS CERTIFICATIONS MUST BE DENIED.**

### A.    Applicable Legal Standards

Plaintiffs may establish class status, "only if the following four categories are met: (1) the class is so numerous that joinder of all members is impracticable (numerosity), (2) there are questions of law or fact common to the class (commonality), (3) the claims or defenses of the Plaintiffs are typical of the claims or defenses of the class (typicality), and (4) the Plaintiffs will fairly and adequately protect the interests of the class (adequacy)." Fed. R. Civ. P. 23(a). Additionally, the action must fall within one of the three categories of Fed. R. Civ. P. 23 (b).

In the event a group of Plaintiffs cannot meet the prerequisites set forth in Fed. R. Civ. P. 23(a) and (b), they cannot be deemed a "class," and therefore, cannot be subdivided as provided

2

for by Fed. R. Civ. P. 23(c)(5).  Of course, before seeking certification of a "sub-class" under Fed. R. Civ. P. 23(c)(5), a "class" must first be established by satisfying the prerequisites of Fed. R. Civ. P. 23 (a) and (b).

In this instant matter, Plaintiffs attempt to circumvent the stringent requirements of Fed. R. Civ. P. 23 by the assertion of "sub-classes" that purport to meet the requirements of the Rule. However, together, the three named Plaintiffs simply cannot meet the requirements of Fed. R. Civ. P. 23(a) and (b), and therefore cannot be designated a "class."  A plain reading of the Rule makes it clear that the requirements of Fed. R. Civ. P. 23 are "Prerequisites" and therefore must be established before reaching an analysis of the propriety of subdivision under subsection (c)(5) of the Rule. Having failed to satisfy these prerequisites, Plaintiffs cannot be certified under Fed. R. Civ. P. 23(c)(5)- the sub-division request is not ripe and is inappropriately made at this juncture.  Simply stated, no class has been established and thus it cannot be sub-divided.

In fact, not only must Plaintiffs' motion be denied, but the class action allegations must be *dismissed* because, as a matter of law and by the Complaint's very nature, the allegations contained in the Plaintiffs Complaint cannot satisfy the requirements of Fed. R. Civ. P. 23.  See also, *John Alba, an individual, et.al, v. Papa John's USA, Inc.*, 2007 U.S.Dist. Lexis 28079.

**B.      Plaintiffs' Motion for Class Certification Must Be Denied, and its Class Action Claims Dismissed, Because There Are No Circumstances Under Which Plaintiffs Can Satisfy The Commonality And Predominance Requirement for Class Certification.**

        1.      The Plaintiffs have failed to allege any common issues of fact or law as required by Fed. R. Civ. P. 23(a)(2).

As a matter of law, the Plaintiffs Complaint fails to state any common issues of law or fact as required by Fed R. Civ. P. 23(a)(2).  Of significance, the commonality requirement

"evaluates the sufficiency of the class itself." *Georgine v. Amchem Products. Inc.*, 83 F.3d 610, 632 (3d Cir. 1996). The nature and extent of the factual and legal questions common to the proposed class is at the heart of the analysis under Fed. R. Civ. P. 23. *See Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 157 n. 13 (1982). The prerequisite of "commonality" requires an issue such that relief will "turn on questions of law applicable in the same manner to each member of the class." *Id.* (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-701 (1979)).

Quite simply, without common issues, no economy is achieved by the class action technique. Moreover, the mere existence of a generalized "common" question will not satisfy the commonality requirement. As the Sixth Circuit has noted, "[i]t is not every common question that will suffice [because] ... at a sufficiently abstract level of generalization, almost any set of claims can be said to display commonality. What we are looking for is a common issue the resolution of which will advance the litigation." *Sprague v. General Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998), *cert. den.*, 524 U.S. 923 (1998).

The Plaintiffs have alleged that the following questions of law and fact are common to all members of each class: (a) whether the actions or activities of Defendant violated the New Jersey State Wage and Hour Law; (b) whether the actions or activities of Defendant towards the Plaintiffs violated the Fair Labor Standards Act; and (c) whether the Plaintiffs and members of the class sustained damage or loss. [Liebhauser Cert., Exhibit "A" (Complaint, ¶ 1, 3 and 6)].

The first two "common" questions of law and/or fact simply reiterate the basis for the Plaintiffs causes of action. *See id.* at ¶ 2, 3, 6, 8. The third "common" question of law or fact regarding whether each class member sustained damages, is merely a substantive element of each other question proposed by the Plaintiffs and will depend on facts particular to *each*

4

individual member. *See id.* Indeed, the broad "common" questions of law or fact alleged by Plaintiffs are not "common" as defined by Fed. R. Civ. P. 23 (a)(2).

> i.    *The questions of law or fact posed as "common" by the Plaintiffs are merely reiterations of the Counts of the Complaint and do not constitute common issues of law as defined by Fed R. Civ P. 23(a)(2).*

Such broad "common" questions of law or fact, as set forth by Plaintiffs in their Complaint do not constitute "common" issues of law or fact as defined by Fed. R. Civ. P. 23 (a)(2). This is because to be common, a question "must be susceptible to being answered after the presentation of common proof that will apply *equally* to every class member." *See Abbent v. Eastman Kodak, Co.*, supra, at *5.

Here, despite the Plaintiffs broad allegations as to commonality, the proofs necessary to answer the proposed "common" questions will not apply equally to every class member. In fact, because the proposed "common" questions are merely restatements of the asserted causes of action, each individual class member will have to set forth evidence of his or her specific circumstances, particularly with respect to the elements of damages, in order to answer each such "question." By the very nature of the Complaint each Plaintiff is seeking restitution for alleged violations of different statutes involving different issues, i.e. rounding, overtime, etc.

Further, this case involves numerous different individual factors that are relevant to the substantive claims element and damages. These specifically include whether an individual's time card was accurate and that the individual worked the hours stated, whether an employee is a part time or full time worker and whether an employee is salaried or stand-by status. Additionally, each Plaintiff has a different claim which must be evaluated under different statutes.

Thus, a determination of whether a class member suffered damages requires an examination at each individual class member's circumstance to determine the extent to which a

person may have sustained damages and what alleged violation each person is alleging harm resulting from causing their alleged damages. Because of the predominance of individual differences between each of the Plaintiffs' claims, it follows that the questions posed by the Plaintiffs are not common under Fed. R. Civ. P. 23(a)(2). Obviously, these determinations could not be accurately and fairly made on a class-wide basis." *Id.* This is especially true because the Plaintiffs are alleging different statutory violations which caused their purported damages.

As all of the foregoing demonstrates, while class members "may rely on the same *theory* of recovery, resolution of [the alleged common questions] can only be decided on a [Plaintiff-by-Plaintiff] basis, rather than on a non-specific class-wide basis. Here, the Plaintiffs are ___**not**___ relying upon the same theory of recovery. Such highly specific factual and legal determinations are not consistent with the commonality requirement of a class action and, indeed, undercut the purpose of the class action procedure." *Liberty Lincoln Mercury, Inc. v. Ford Mktg. Corp.*, 149 F.R.D. 65, 76 (D. N.J. 1993). "When the resolution of a common legal issue is dependent upon factual determinations that will be different for each purported class Plaintiff …, courts have consistently refused to find commonality." *Id.* (citations omitted). This court should do the same.

Based upon the foregoing, the class action allegations must be dismissed as the Complaint fails to allege any question deemed common under the Fed. R. Civ. P. 23(b)(2) analysis.

> 2.   Even if the preliminary commonality requirement for classification could be satisfied, there are no circumstances under which this action could satisfy the more stringent predominance and superiority requirements of Fed. R. Civ. P. 23(b)(3).

Assuming *arguendo* that this Court finds that Plaintiffs' Complaint satisfies the commonality requirement for class certification, which we respectfully submit it does not, there

6

exists no set of circumstances for any conceivable class which would satisfy the predominance and/or superiority requirements of Fed. R. Civ. P. 23(b)(3). For certification under this category, the Court must find that:

> the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed. R. Civ. P. 23(b)(3). *See* [Liebhauser Cert., Exhibit "A" (Complaint)].

### i.     *Predominance requirement*

Even if this Court finds Plaintiffs have satisfied all four prerequisites of Rule 23(a), which we submit Plaintiffs have not, Plaintiffs must also satisfy one of three subsections of Rule 23(b), which requires that "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members. Fed.R.Civ.P. 23(b)(3). The inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623, 117 S.Ct. 2231, 138 L.Ed. 2d 689 (1997).

As discussed above, there are no circumstances under which Plaintiffs' Complaint could satisfy the commonality requirement for class certification. Nonetheless, assuming *arguendo* that the Court decides otherwise, there are also no circumstances under which any conceivable class could satisfy the more stringent predominance requirement of Fed. R. Civ. P. 23(b)(3). The principle behind the predominance requirement is that "when individual rather than common issues predominate, the economy and efficiency of class action treatment are lost and the need

for judicial supervision and the risk of confusion are magnified." *See Kelvin Damassia, et.al. v. Duane Reade, Inc., et. al., 2008 U.S. Dist. Lexis 41650.* In this case, there can be no doubt that myriad individual issues far outweigh any conceivable issues which may be deemed common.

The substantial weight of case law supports dismissal due to the Plaintiffs inability to satisfy the commonality and predominance requirements. Here, we submit that Plaintiffs do not meet the requirements of Fed. R. Civ. P. 23(a) because each Plaintiff has different circumstances and is making a different claim. Thus, there is no need to move further in the analysis. However, here, if the court finds that Plaintiffs have met the requirements of Fed. R. Civ. P. 23(a), Plaintiffs do not fit into any of the categories enumerated in Fed. R. Civ. P. 23(b), thus, the class action allegations must be dismissed.

In the case at bar, liability will depend on whether each individual class member a certain number of class members suffered alleged damages from "rounding" or whether a different number of other class members suffered alleged damages because of a failure to compensate time and a half of the rate. More specifically, some Plaintiffs are alleging "rounding" which must be proven by individual analysis of pay records in order to properly provide restitution if such is warranted. Here, White and Smart are claiming that their pay was "rounded" which led to them not being compensated for the hours worked. Both Smart and White have different job duties and have different job titles. Not all of the proposed members are claiming rounding. Some of the proposed members/Plaintiffs are claiming failure to pay overtime at a rate of one and a half times the rate for hours worked over 40 hours. Here, Plaintiff Danbury is alleging that he was a full time worker but was not paid properly for every hour he worked in overtime.

For instance, Plaintiff White is a former part-time bus driver with a regular schedule, while Smart is presently a part-time "stand-by" bus aide. Their claims based upon rounding will depend

8

upon their job titles, duties, differential in work hours, etc. More importantly, Plaintiff Danbury's claim is completely different in that he is a full-time bus driver claiming that he was not paid for hours worked over 40 hours per week at the proper rate. Plaintiffs' White and Smart, part-time workers allege different damages from full-time workers, like Plaintiff Danbury which are entitled to overtime can claim.

Other issues include how such restitutions should be paid because each individual is from a different class making a different claim. *Infra*. Again, Plaintiff White was a part-time bus driver while Plaintiff Smart is a part-time stand by bus aide. By the very nature of the Complaint each Plaintiff is seeking restitution for allegedly different harms under different statutes for different issues, i.e. rounding being one issue and lack of overtime pay being another issue.

Plaintiff Danbury is not alleging rounding, he is alleging that as a full-time employee he was not paid time and a half (overtime) for alleged work performed. A completely different class, a completely different claim lumped into one purported class action where it is plead that all of the individuals are within the same class. It is obvious that by the very nature of their claims, they can not be a member of the same class.

Based on all of the foregoing, even if the Plaintiffs could set forth any common issues, the individual questions overwhelmingly predominate over any conceivable common questions, rendering class treatment inappropriate and unsuitable for certification. Although, it is generally "desirable to litigate similar, related claims in one forum," here, as exemplified above, there are numerous factual issues that cannot be adjudicated on a class-wide basis. *See In re Ford Motor Co. Ignition Switch Products Liab. Litig.*, 174 F.R.D. at 351. The divergent issues are simply too numerous, and thus "negate any efficiencies brought on by the use of the class action device." *See*

*id.* at 352. Accordingly, the class action allegations should be dismissed as a matter of law and do not meet the requirements of Rule 23(b).

### ii. Superiority

Though it is clear that the requirements of commonality and predominance cannot be satisfied under any circumstances or by any conceivable class, there are also no circumstances under which the superiority requirement can be met. The superiority requirement asks the court "to balance, in terms of fairness and efficiency, the merits of a class action against those of 'alternative available methods' of adjudication." *See Georgine v. Amchem Products, Inc.*, 83 F.3d at 632. One cannot discount the interest and ability of class members in individually controlling the prosecution of their respective actions.[1] *See* Fed. R. Civ. P. 23(b)(3)(A).

Here, the proposed class members have an extraordinarily strong interest in controlling their own individual cases, as "[i]t is clear that many factual and legal issues will have to be tried individually, based on evidence, documents and witnesses that are both specific and local to each case." *See Abbent v. Eastman Kodak Co.*, supra. at *9 (quoting *In re Sch. Asbestos Litig.*, 789 F.2d 996, 1009 (3d Cir. 1986)). As discussed at length above, the Plaintiffs cannot show that common issues predominate over individual issues. Thus, the importance of each different detail unique to each particular Plaintiff regarding damages outweighs the single determination that Defendant's alleged conduct is actionable under New Jersey statutory or common law. It follows that the most reasonable method of proceeding is on an individual, case-by-case basis. *See Curley v. Cumberland Farms Dairy, Inc.*, 728 F. Supp. 1123, 1133-34 (D. N.J. 1990).

Lastly, this case is not necessarily one in which each individual Plaintiff would be without a means of redress. Rather, this action involves claims for alleged monetary injuries that do not

---

impact on the lives of the Plaintiffs in the same way, if at all. Thus, Plaintiffs have a substantial

stake in making individual decisions on whether or not to settle and for how much.

C.   **Plaintiffs' Motion for Certification Must Fail and Its Class Action Claims Must Be Dismissed, Because In Addition To Its Failure To Satisfy The Commonality, Predominance, And Superiority Requirements, Plaintiffs Cannot Satisfy The Remaining Requirements Of Fed. R. Civ. P. 23(a).**

1.   Beyond the fact that the Plaintiffs claims are not typical of other proposed class members, there is no conceivable class which could satisfy the typicality requirement of Fed. R. Civ. P. 23(a)(3).

A threshold prerequisite of class certification requires Plaintiffs to show that the claims or

defenses of the representative parties are typical of the claims or defenses of the class Fed. R.

Civ. P. 23(a)(3). *See* [Liebhauser Cert., Exhibit "A"]. However, review of the Complaint

demonstrates that there are no circumstances under which the Plaintiffs claims can satisfy the

typicality requirement of Fed. R Civ. P. 23(a)(3). In fact, it is not even claimed by Plaintiffs

because each claim is separate and different.

The typicality requirement for class certification pursuant to Fed R. Civ. P. 23(a)(3)

mandates "that the harm complained of be common to the class." *Liberty Lincoln Mercury, Inc.

v. Ford Mktg. Corp.*, 147 F.R.D. at 77 (quoting *Hassine v. Jeffes*, 846 F.2d 169, 177 (3d Cir.

1988)). Further, the typicality requirement "is designed to screen out class actions involving

legal or factual positions of the representative class which are markedly different from those of

other class members." *Id.* (citations and internal quotations omitted). In those situations where

the legal or factual positions of the named Plaintiffs are "markedly different," such as the case

presented here, "there exists the danger that unique circumstances or legal theory will receive

inordinate emphasis and that the other claims will not be pressed with equal vigor or will go

unrepresented." *Zinberg v. Washington Bancorp., Inc.*, 138 F.R.D. 397, 406-07 (D. N.J. 1990)

11

(quoting *Weiss v. York Hospital*, 745 F.2d 786, 810, n.36 (3d Cir. 1984), *cert. den.*, 470 U.S. 1060 (1985)).  Likewise, the Plaintiffs must not have interests antagonistic to those of the class. *Wetzel v. Liberty Mutual Ins. Co.*, 508 F.2d 239, 247 (3d Cir.), *cert. den.*, 421 U.S. 1011(1975). "This prerequisite is essential to due process, because a final judgment in a class action is binding on all class members." *In re Telectronics Pacings Systems. Inc.*, 172 F.R.D. 271, 281 (S.D. Ohio 1997) (quoting *In re American Medical Systems*, 75 F.3d 1069, 1083 (6th Cir. 1996)).

Here, the Plaintiffs White (former bus driver) and Smart (stand-by bus aide) essentially allege that their compensation did not reflect the total hours worked. Plaintiff Danbury (a former full-time bus driver) alleges that he was not compensated at a rate of time and half for hours worked over 40 hours in a week.  Based on the Plaintiffs allegations about their individual circumstances, the Complaint as plead could never satisfy the typicality requirement because each Plaintiffs irrespective circumstance would always be markedly different from other class members. *See id.* (quoting *Hassine*, 846 F.2d at 177).

First, it is doubtful that the Plaintiffs damages are typical of any putative class member. Each of these claims turns on factors unique to each individual. Plaintiffs' have different circumstances and, more importantly, different claims for which they are requesting relief under different statutes for different alleged damages.

Second, the proposed class representative's claims can never establish typicality as defined pursuant to Fed. R. Civ. P. 23(a)(3) because there are a multitude of variables which may be different for each individual member of the potential class(es) regarding (1) such member's calculation of time worked, (2) duties, and job title (3) the extent of each proposed class members damages being that there are different claims. *See supra* Section (B).  For instance,

Case 3:09-cv-05408-FLW-LHG    Document 14    Filed 02/02/10    Page 13 of 29 PageID: 291

even if another class member's have the same job title and duties and work the same number of hours either part-time or full-time, the circumstances in which the damages must be calculated would vary depending upon their individual route, length of route, normal time in completing a route, whether the employee noted special circumstances that would change the normal route times. Thus, the Plaintiffs and the class member with identical job title and hours worked may have substantially different routes, times to report, only morning hours or afternoon hours and different damages as a result of these individual factors.

Lastly, the Plaintiffs Complaint will not satisfy the typicality requirement because Plaintiffs causes of action sound in restitution for failure to compensate. The proof required to establish these claims will necessarily vary for each individual Plaintiff. See *Abbent v. Eastman Kodak Co.*, supra, at *7. The court also observed that there were defenses against the named Plaintiffs that may or may not be available against absent members of the class." *Id.* Such are the circumstances here.

Based on all of the foregoing, the class action allegations must fail because the typicality requirement cannot be met by Plaintiffs' Complaint under any circumstances.

> 2. The Plaintiffs cannot adequately represent the interests of the putative class members as required under Fed. R. Civ. P. 23(a)(4).

Fed. R. Civ. P. 23(a)(4), requires that the class representative "fairly and adequately protect the interests of the class." The adequacy inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Products, Inc. v. Windsor*, 521 U.S. at 625 (citations omitted). With respect to the separate but related threshold prerequisite of the "adequacy" of the class representative, "the Plaintiff must not have interests antagonistic to those of the class." *Wetzel v. Liberty Mutual Ins. Co.*, 508 F.2d at 247, *cert. den.* 421 U.S. 1011 (1975). "This prerequisite is essential to due process, because a final judgment in a class action is

13

binding on all class members." *In re Telectronics Pacings Systems. Inc.*, 172 F.R.D. at 281 (quoting *In re American Medical Systems*, 75 F.3d at 1083). The mere fact that a complaint alleges a cause of action common to the class does not itself ensure that the party who brought the suit would be an adequate representative of other class members. *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. at 157.

Considerations relevant to commonality, typicality and predominance are also relevant to ascertaining whether the adequacy of representation requirement has been met. Here, even if the broad classes identified by the Plaintiffs were divided into sub-groups and additional representatives were named, the adequacy of representation could not be met due to inevitable and "serious intra-class conflicts" that exist due to the nature of this action. *See also Georgine v. Amchem Products, Inc.*, 83 F.3d at 630.

As in *Georgine*, and as more fully noted above, the "most salient conflict" in this case is between presently injured and future Plaintiffs. *See id.* at 630-31. In *Georgine*, [t]his conflict[,] as well as other conflicts among different types of claimants[,] preclude[d] a finding of adequacy of representation. *Id.* at 631. *See supra* Section (B). Similarly, this conflict, as well as the numerous issues of law and fact, precludes a finding of adequacy of representation, and, accordingly, the class action allegations should be dismissed as a matter of law. *See* [Liebhauser Cert., Exhibit "A" (Complaint, ¶ 2, 3, 4, 6, 7, 8, 12, 13, 16, 20)].

> 3.     The Plaintiffs conclusory allegations with respect to
>        numerosity are insufficient to satisfy Fed. R. Civ. P.
>        23(a)(1).

The Plaintiffs Complaint contains insufficient facts to satisfy the numerosity requirement of Fed. R. Civ. P. 23(a)(1). To satisfy the numerosity requirement, the class must be so large that joinder is impractical. *See Liberty Lincoln Mercury, Inc. v. Ford Mktg. Corp.*, 149 F.R.D. at

73. "[M]ere conclusory or speculative allegations that joinder is impractical are not sufficient to satisfy the numerosity requirement." *Id.* at 74. Further, "[t]he number of potential class members is not, itself, determinative" as "[i]mpracticability does not mean impossibility, but rather that the difficulty or inconvenience of joining all members of the class calls for certification." *Id.* at 73-74. Practicability of joinder depends on factors such as whether proposed members of the class would be able to pursue remedies on an individual basis and the size of the class. *Id.* at 74. In this case, even a class containing *substantially less* members than posited by the Plaintiff (here 100) to exist will certainly implicate management issues as this is an action seeking monetary damages involving numerous and indeterminable individual issues of law and fact. *See infra* Section (B) and *Abbent v. Eastman Kodak, Co.*, supra, at *7 (discussing problems of managing class presumed to be in millions). *See also* [Liebhauser Cert., Exhibit "A" (Complaint)].

Despite the Plaintiffs weak attempt to allege to the contrary, a class action is not appropriate in this case because, due to the nature of the damages allegations, "proposed class members are able to protect and defend their own interests." *See Liberty Lincoln Mercury, Inc. v. Ford Mktg. Corp.*, 149 F.R.D. at 74. *See also* [Liebhauser Cert., Exhibit "A" (Complaint)]. Moreover, due to significant differences in the job titles, duties, amount of hours worked and part-time or full-time employees and claims made, individual Plaintiffs have a specific interest in controlling settlement negotiations.

With respect to class size, the Plaintiffs suggest classes consisting of one hundred individuals who are employed or were employed by Defendants. *See* [Liebhauser Cert., Exhibit "A" (Complaint, ¶ 17)]. The Plaintiffs' numerosity allegations are flawed for several related reasons.

15

First, the Plaintiffs attempts to state a claim on behalf of all individuals who merely were employed with Defendant, irrespective of whether such putative class members have suffered any harm at all.   In doing so, Plaintiffs conveniently ignore the fact putative class members must show that they suffered injury and damages as a result of failing to be compensated for time worked.   As a result of the improper inclusion of putative class members who merely were or are employed with the Defendant and have suffered no harm at all, it is impossible to determine from the Complaint whether Plaintiffs can satisfy the numerosity requirement for class certification as set forth in Fed R. Civ. P. 23(a)(1).

Next, assuming for purposes of this motion that the Plaintiffs individual allegations are true, even if there was such a limitation, there can be no doubt that the Plaintiffs have different job titles, job duties and work different hours and some are part-time and some are full-time. Critically, Plaintiff Danbury alleges a totally different claim than White and Smart.   Thus, by the very nature of the Complaint, the Plaintiffs numerosity allegations should be dismissed as a matter of law as there are no circumstances under which Plaintiffs class action causes of action would be able to satisfy the numerosity requirement for class certification under Fed. R. Civ. P. 23(a)(1) or in the alternative dismissed without prejudice to more clearly plead the numerosity allegation.

### D. Plaintiffs' Motion for Certification Must Fail, and Its Class Action Claims Must Be Dismissed Because The Claims Are Offensive to Both Provisions of Fed. R. Civ. P. 23(b)(1).

Certification of the class outlined by Plaintiffs would be is inappropriate under subsection

(A) of Fed. R. Civ. P. 23(b)(1), which permits certification where

> the prosecution of separate actions by or against individual members of the class would create a risk of … inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class.

*See* [Liebhauser Cert., Exhibit "A" (Complaint, ¶ 21)].  First, any conceivable class could not be certified under subsection (A) because this category "is designed to protect the interests *of the party opposing the class*." *See In re Ford Motor Co. Ignition Switch Products. Liab. Litig.*, 174 F.R.D. at 354.  Further, certification under subsection (A) is not appropriate in an action in which the claim for monetary damages is a predominant aspect of the relief sought. *See id.*  Accordingly, because the Defendant is not seeking protection under subsection (A), and because the predominant relief sought is monetary damages, certification would be inappropriate. *See id.*

Certification is equally inappropriate, and would likely yield significant unjust results, under subsection (B) of Fed. R. Civ. 23(b)(1), which permits certification where

> the prosecution of separate actions by or against individual members of the class would create a risk of ... adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

Fed. R. Civ. P. 23(b)(1)(B). *See* [Liebhauser Cert., Exhibit "A" (Complaint)].  This is because subsection (B) *requires* that all of those who come within its description become and remain members of the class as no opt-out provision exists. *See In re Sch. Asbestos Litig.*, 789 F.2d at 1002. *See also See PBA Local No. 38 v. Woodbridge Police Dep't*, 134 F.R.D. 96, 103 (D. N.J. 1991) ("[T]here is no 'common fund' or anything akin thereto, the most common use of this subsection, which indicates that prejudice would result as a practical matter to members not party to the adjudication.").  Further, because this is a proposed class action, "certification of a mandatory class raises serious questions of personal jurisdiction and intrusion into the autonomous operation of state judicial systems." *In re Sch. Asbestos Litig.*, 789 F.2d at 1002.  As discussed above, judicial autonomy problems will exist even if the class is limited to solely part-time or full-time employees

due to the difference is the claims presented. *See* Section (B). Accordingly, certification under subsection (B) would also be improper.

## POINT TWO

### PLAINTIFF, GEORGE DANBURY'S MOTION FOR CERTIFICATION UNDER 29 U.S.C. § 216(B) MUST FAIL BECAUSE PLAINTIFF HAS FAILED TO SHOW HE IS "SIMILARLY SITUATED" TO ANY POTENTIAL CLASS MEMBERS

Plaintiff, George Danbury, (hereinafter "Danbury"), is the only named Plaintiff to this action that has attempted to state a claim based upon an alleged failure to pay overtime wages. In Plaintiff's cross-motion, he asks this court to certify a "collective action" based upon bald assertions of similarity. Plaintiff's attempt to assert his similarity is set forth within two sentences in an un-sworn certification attached to his motion. His claims fall *far* short of the modest evidentiary burden imposed upon him at this preliminary stage and his cross-motion for conditional certification must be denied accordingly.

Title 29 of the United States Code, subsection 216(b) provides for an action known as a "collective action." This type of action allows potential class members who are similarly situated to the named Plaintiffs, to file a written consent with the court to opt into the case. 29 U.S.C. § 216(b). Although the FLSA does not define the term "similarly situated," courts in the United States Court of Appeals for the Third Circuit adopted a well-settled, two-step process. First, the court determines whether potential class members are similarly situated and should be given notice of the action. *Bouder v. Prudential Financial, Inc., et al*, 2008 U.S. Dist. LEXIS 25103, citing *Herring v. Hewitt Assocs., Inc.*, No. 06-267, 2007 U.S. Dist lexis 53278, 2007 WL 2121693 (D.N.J. July 27, 2007), citing *Morinsky v. Pub. Serv. Elec. & Gas Co.*, 111 F. Supp. 2d 493, (D.N.J. 2000). At this preliminary stage, "Plaintiffs must show a factual nexus between their situation and the situation of other current and former employees, sufficient to determine

18

that they are similarly situated." *Herring* at 5.    If a Plaintiff makes this initial showing, a court may conditionally certify the group and allow notice of the action to be sent to potential Plaintiffs.   Later on in the litigation, the matter will be subjected to a second analysis of the group's similarities and differences, at which time a court will make a final decision as to whether the group may proceed as a class action. *Bouder* at 8.

At the initial, "notice stage" of the analysis, Plaintiff bears the burden of showing that he is similarly situated to the purported members of the class.  Id.    It is true that at the notice stage, courts apply a fairly lenient standard in determining whether to allow Plaintiffs to proceed with sending notice to prospective class members.  *Morinsky* at 497.  However, Plaintiffs are required to make a tangible showing of similarity.   Plaintiff acknowledges he must make this showing, and notes that the Eleventh Circuit Court of Appeals has interpreted his burden as requiring "substantial" and "detailed allegations" made by Plaintiffs in their complaint along with evidentiary support in the form of affidavits.  See *Grayson v. K-Mart Corporation*, 79 F.3d at 1097.

Plaintiffs' moving papers note that a "faction" of the Third Circuit Court of Appeals requires a more "exacting standard," in order to make a threshold "similarly situated" showing, but fails to put before this court any example of the application of this standard by any United States District Court for the District of New Jersey, the venue of the instant matter.   Rather, Plaintiffs have engineered an argument based upon notes from other jurisdictions that have interpreted this standard more leniently.  The United States District Court for the District of New Jersey has recognized the burden upon Plaintiffs moving for collective certification and has required such Plaintiffs to submit to the court a tangible level of detail and substance in their pleadings and affidavits that Danbury has not nearly achieved.

An example of the depth required by New Jersey courts is provided in *Morinsky v. Pub. Serv. Elec. & Gas Co.*, 111 F. Supp. 2d 493, (D.N.J. 2000). In *Morinsky*, seven named Plaintiffs moved for conditional certification as a collective class action under 29 U.S.C. 216(b). In its opinion, the court noted a brief summary of the Plaintiff's situations as shown to the court. Each of the seven moving Plaintiffs gave their job title, a detailed list of their job duties, and noted the theory under which each Plaintiff felt entitled to overtime pay. The seven named Plaintiffs purported to bring the action on behalf of a "class" defined as:

> *(A)ll non-supervisory, non-professional employees of Defendant, employed at Defendant's nuclear generating stations located in Salem County, New Jersey, who held positions in salary grades 9 through 13, and whose work impacts uon the production of process at Defendant's nuclear generating plants; impacts upon the maintenance, retrofitting, safety and/or operations of those plants; or otherwise is linked to and affects the ability and efficiency of those plants to generate their product-electricity."*

*Id.* at 496.

Noteworthy is that, in addition to the seven named Plaintiffs, at the time the court considered Plaintiffs' motion, over 100 potential Plaintiffs had filed consent forms expressing a desire to be joined in the action. *Id.* at 497. The seven named Plaintiffs claimed they were similarly situated to these 100-plus potential Plaintiffs in that they were all victims of Defendant's "uniform policy of ignoring – or at the very least misapplying" the proper analysis in making the determination that they were exempt from the overtime compensation requirements of the FSLA. *Id.* In essence, and as the court noted, Plaintiffs argued that they were victims of a "common scheme" to deny them overtime, and alleged that by virtue of this common scheme, and commonalities in their jobs, Plaintiffs deemed themselves similarly situated.

The *Morinsky* court was not satisfied with that level of detail and substance. The *Morinsky* court recognized that what Plaintiffs were truly challenging was the underlying decisions of Defendant to categorize its employees as exempt. The court noted that Defendant's decision to exempt all employees in pay grades 9-13 was not *per se* improper. Rather, the court stated that in order to determine which employees were entitled to overtime under the FSLA, the court would need to undertake an individual, fact-specific analysis of each employee's job responsibilities under the relevant statutory exemption criteria. The court summarized the action by stating that the ultimate issue to be determined was whether each employee was properly exempted.

The *Morinsky* Plaintiffs had provided the Court with evidence as to the job descriptions, job titles, duties, and theories of seven named Plaintiffs and set forth a broad class definition which, together, was held insufficient to establish Plaintiffs were "similarly situated" to the potential class. The court analyzed the information before it and found that:

 *"Plaintiffs (had) made no showing that the job responsibilities of the named Plaintiffs were the same or similar to those of the remaining members of the proposed class, or that the opt-in Plaintiffs could properly be classified as non-exempt employees. In fact, Plaintiffs do not even discuss the job responsibilities of the opt-in Plaintiffs." Id. It found that Plaintiffs referenced an "extremely broad 'general connection'" between the proposed class members. Id.*

The court denied the motion and found the Plaintiffs' showing simply insufficient to establish they were truly "similarly situated" for purposes of collective certification, to each other or the proposed class.

By contrast, the U.S. District court for the District of New Jersey granted conditional certification to two moving Plaintiffs in *Herring v. Hewitt Associates, Inc.*, 2007 U.S. Dist. LEXIS 53278, who submitted sufficiently substantial allegations. In that case, Plaintiffs, benefits analysts employed by Hewitt Associates, sought conditional certification under 29

21

U.S.C. § 216(b). In moving for certification, the named Plaintiffs presented the court with the following.

First, they alleged they held: 1) the same job as the proposed class; 2) had the same job responsibilities as the proposed class; 3) were subject to the same job expectations as the proposed class; and 4) were subject to the same company-wide policy of classifying them as exempt from overtime pay. Plaintiffs in *Herring* specified that they: 1) regularly worked in excess of 40 hours per week; 2) were expected to work over 40 hours per week; and 3) were uniformly not paid due to this company-wide policy, defining them as "exempt." Importantly, Plaintiffs also put before the court: 1) Defendant's written job description for the roles of the Plaintiffs, detailing the responsibilities and expectations of Defendant's employees under that job title; 2) sworn testimony from multiple depositions that typical hours for benefits analysts could range from 45 to 50 hours per week; 3) sworn testimony from multiple depositions that that the company encouraged those hours; 4) information that benefits analysis were paid as salaried employees; and 5) an estimate of the size of the class of similarly situated opt-in Plaintiffs. Also, the court considered testimony from multiple depositions that shed light on: 1) how the analysts were viewed and supervised within the company; 2) detailed testimony regarding how these employees worked with and were trained on Defendant's various databases and systems; and 3) testimony as to their authority within the company as to its processes and procedures etc. Together, the information set forth by moving Plaintiffs in *Hewitt* provided the court with a detailed and substantial showing of the nature and scope of the moving Plaintiffs' situations and potential Plaintiffs' situations within the particular company's structure. The detail provided the court with sufficient information to effectively narrow the potential class down to a

distinguishable and definite group within the Defendant company, and as such, this court granted Plaintiffs' motion for conditional certification.

Danbury's pleading and certification presents this court with nothing more than bald, general assertions that amount to *less* information than that which failed the New Jersey Court's test in *Morinsky*. In fact, Danbury's pleading is so broad and general on its face that it requires no analysis. In his pleading, Danbury simply uses the terminology "similarly situated," but fails to plead any supporting facts.

Danbury next presents the certification attached to his cross-motion. Immediately, it is clear that again, on its face, Danbury's papers fall short of the standards this court requires. First, Danbury has not even provided this court with testimonial evidence in the form of a sworn statement. Rather, he provided a certification. The case law routinely requires some modicum of evidence in the form of pleadings or affidavits in order to consider certifying a collective action. See *Morinsky* at 14, *Herring* at 13, *Bouder* at 7. Here, the court is provided only with a self-serving, un-sworn , certification, of Danbury.

More importantly, beyond that facial deficiency, Danbury's certification is not nearly as substantial or detailed as New Jersey courts have required in order to establish similarity in situation. In fact, the only attempt at providing this court with any factual nexus between Danbury and potential class members is set forth in two short sentences in his certification. Danbury states in paragraph 10 that he "is aware that none of (his) co-employees who are or were full-time bus drivers ever received any overtime pay for the hours that they worked in excess of forty hours during any given work week" and that he "knows this information based upon my conversations with them and in many instances, the comparison of our weekly pay checks." (Danbury Cert., ¶ 10.) Danbury provides no detail, not even a name of a co-worker,

not a date of these alleged conversations, no description of anyone's job responsibilities, duties, expectations, etc. Danbury does not provide this court with a scintilla of evidence that would allow this court to meaningfully consider whether he is similarly situated to anyone.

Danbury's failures are even greater than the attempt rejected by this court in *Morisky*. Danbury has not made *any* showing that his job responsibilities are the same or similar to those of the remaining members of the proposed class, or that the opt-in Plaintiffs could properly be classified as non-exempt employees. Just as the *Morisky* Plaintiffs, Danbury attempts to use extremely broad, general claims to justify a finding of similarity. As such, consistent with this court's holding in *Morisky*, Danbury's claims must be denied.

## POINT THREE

### DEFENDANT'S MOTION FOR CONDITIONAL CERTIFICATION UNDER 29 U.S.C. § 216(B) MUST FAIL BECAUSE A COLLECTIVE APPROACH TO THE ULTIMATE LEGAL QUESTION IN THIS CASE IS NOT EFFICIENT AND REQUIRES A FACT-SPECIFIC ANALYSIS AS TO EACH COMPLAINING PARTY TO DETERMINE WHETHER THEY WERE ENTITLED TO OVERTIME PAY OR EXEMPT UNDER THE FAIR LABOR STANDARDS ACT

The underlying claims in the instant matter are in essence the same as those presented in *Morisky*. In that case, the court held that in order to determine which employees, if any, were entitled to overtime compensation under the FSLA depended upon an individual, fact-specific analysis of each employee's job responsibilities under the relevant statutory exemption criteria. The court found the ultimate issue to be determined in that case was whether each employee was properly classified as exempt. *Id*. at 16. Similarly to the Plaintiffs in *Morisky*, the moving Plaintiff in this case asks the court to certify the collective class based upon an unwillingness to pay overtime. However, the duty to pay overtime, unlike duties under the law that arise from discriminatory policies based upon age, race, etc., is not certain. Exemptions are provided within

24

Case 3:09-cv-05408-FLW-LHG Document 14 Filed 02/02/10 Page 25 of 29 PageID: 303

the statutory scheme that permit a company to lawfully withhold overtime pay in certain

situations. This court in *Morisky* recognized this distinction when it stated that:

> *Plaintiffs points (sic) to several age discrimination cases in support of their*
> *argument that class certification is appropriate... However, as noted by the court*
> *in Pfaahler v. Consultants for Architects, Inc. (internal citation omitted), a*
> *discrimination case focuses on whether the Defendant had a policy of*
> *discriminating against its employees, therefore, a primary showing of*
> *discrimination is common to all potential claimants, making them similarly*
> *situated. The focus in this action, however, is on the distinction between an*
> *exempt and non-exempt employee. Unlike in a discrimination case, the focus in*
> *(sic) not on PSEG's actions, but instead on the nature of the employee's job*
> *duties in the context of the relevant exemption criteria... Therefore a collective*
> *action would only be appropriate where the Plaintiffs make some showing that the*
> *nature of the work performed by other claimants is at least similar to [their] own.*
> Id. at 17.

Having failed to make a sufficient showing that would allow the court to make that

analysis of the underlying issue, the United States District Court for the District of New Jersey

denied the *Morisky* motion. Again, the *Morisky* circumstance parallels the instant matter.

The *Morisky* court further explained that it found two additional factors that made the

overtime claim unsuitable for collective treatment. First, as noted above, the scope of the class

was contingent upon the ultimate answer to the question that was at the heart of the case, i.e.

whether or not the employees were properly exempt from overtime pay. The *Morisky* court

refused to certify the collective class based upon Plaintiff's own belief as to which employees

do/do not satisfy any of the overtime exemption criteria of the FLSA —the very issue to be

litigated in that action. *Id.* at 18. This is precisely the scenario before the court in the instant

matter. Danbury, without any detailed description of his job duties or those of the proposed

class, claims that he and others were entitled to overtime and were not exempt under the FLSA.

Defendant disagrees. This issue represents the heart of Danbury's claim. Consistent with the

court's ruling in *Morisky*, this court cannot allow Danbury's claim to be certified based upon his

25

own interpretation of the exemptions provided by the FLSA, particularly in the light of his complete and utter failure to provide this court with as much as a scintilla of evidence regarding job responsibilities of his own or of the proposed class members.

Secondly, the *Morisky* court found that litigating a claim of this nature as a collective action would be "anything but efficient," holding that:

> *(T)he "exempt or non-exempt status of potentially hundreds of employees would need to be determined job-by-job, or more likely an employee-by-employee basis." Id. at 19. The court continued to note that the exempt or non-exempt status of any particular employee must be determined on the basis of whether his duties, responsibilities and salary meet all the requirements of the appropriate section of the regulations.... Requiring a detailed analysis of the time spent performing administrative duties and a careful factual analysis of the full range of the employee's job duties and responsibilities. Id. at 19-20, (internal citations omitted.)*

Ultimately, the court held that the individual nature of the required inquiries made collective treatment an improper means of litigation.  The instant matter would require the same analysis. The efficiency behind the reason for the collective approach to litigation is lost in this instance, just as it was is *Morisky* and for the same reason, that a case-by-case approach to Plaintiffs will be necessary to adjudicate their claims. Collective treatment is therefore improper as such, and consistent with the United States District Court for the District of New Jersey's holding in *Morisky*, Plaintiff's motion must be denied.

## POINT FOUR

**IF THIS COURT IS INCLINED TO CERTIFY DANBURY'S COLLECTIVE ACTION, NOTWITHSTANDING DANBURY'S FAILURES AND THE INDIVIDUAL TREATMENT THAT WILL BE REQUIRED, IT SHOULD FIRST DETERMINE WHETHER DANBURY CAN SUSTAIN HIS CLAIM FOR OVERTIME WAGES BEFORE CONSIDERNIG THE BALANCE OF THE RELIEF REQUESTED, AS A MATTER OF JUDICIAL ECONOMY, FUNDAMENTAL FAIRNESS, AND IN THE BEST INTEREST OF THE POTENTIAL CLASS**

In the unlikely event that this court is moved to find that Danbury has presented a detailed and substantial factual basis to support a finding that he is similarly situated to the potential class of Plaintiffs, and finds this matter appropriate for collective action, it should first consider whether Danbury, as the potential class representative, will be able to sustain a claim for overtime wages. A preliminary analysis will serve the best interest of the class and the court and allow for a better expenditure of time and resources.

Danbury believes he was improperly exempted from the overtime wage requirements under the FLSA. Defendant disagrees and feels he was a properly exempted employee. Should this court allow certification based upon Danbury's analysis of his own FLSA claim at this juncture, with so little facts before the court, the court will risk the untenable situation of having a class of persons lose its class representative to a summary action to the detriment of the entire class. To avoid this situation, detrimental to the class of un-named persons, and the expense of judicial time and resources necessary to redress that scenario, Defendant suggests this court make a preliminary finding as to whether Danbury will be able to sustain his claim before allowing him to proceed as the collective class representative.

In addition, it would be fundamentally unfair to Defendant and its employees to cause Defendant to produce confidential human resource records requested in Defendant's cross-motion if Danbury cannot sustain a claim for relief. That would present an unfortunate divulgence of employee's private information, as well as a large financial expense to a party that may ultimately be found to have acted in perfect accord with the law.

Again, Danbury has not made the showing required by New Jersey courts in order to be entitled to the certification he seeks. However, if this court is nevertheless inclined to permit the certification, it would be in the best interest of all parties, including the potential opt-in class

27

members, and in the best interest of fundamental fairness, to have the court determine the fitness of Danbury's underlying claim before moving forward as class representative.

As such, Defendant requests that if this court is inclined to certify the collective class as presented before this court, that this Court stay such certification and the consideration of Danbury's claims under Points VI and V of its motion, and first consider whether Danbury can himself, sustain a claim of entitlement to overtime wages.

## CONCLUSION

Based on the foregoing, it is clear that Plaintiffs neither meet the requirements to be deemed a "class" under Fed. R. Civ. P. 23, nor meet the requirements of 29 U.S.C. § 216(b), and as such, Plaintiffs Motion for Class Certification and Conditional Certification must be denied.

Further, inasmuch as Defendant has shown that, as a matter of law and by the Complaint's very nature, the allegations contained in the Plaintiffs Complaint cannot possibly satisfy the requirements of Fed. R. Civ. P. 23, Plaintiffs' class action allegations must be *dismissed.*

**Respectfully submitted,**

**RICK BUS COMPANY**
By its attorney,

Lynda E. Liebhauser (#LL-1447)
Bonner Kiernan Trebach & Crociata, LLP
299 Cherry Hill Road, Suite 300
Parsippany, NJ 07054
(973) 335-8480

## CERTIFICATE OF SERVICE

I, Lynda E. Liebhauser, hereby certify that a true copy of the within document was served upon Frederick Coles III, Esq., Law Offices of Frederick Coles III, 770 Belvidere Avenue, Plainfield, New Jersey 070628, via first class mail on December 22, 2009.

Lynda E. Liebhauser