**** FOR PUBLICATION ***

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| JOYCE PERRY WHITE, TAHEERAH SMART, GEORGE DANBURY, | : : : : | |
| Plaintiffs, | : : | Civil Action No. 09-5408 |
| v. | : : | **OPINION** |
| RICK BUS COMPANY, | : : : | |
| Defendant. | : : | |

WOLFSON, United States District Judge:

In this putative class action, Defendant Rick Bus Company ("Rick Bus") moves to strike the class allegations in Plaintiff Joyce Perry White's, Taheerah Smart's, and George Danbury's (collectively, "Plaintiffs'") Complaint, pursuant to Federal Rule of Civil Procedure 12(f).[1] The complaint asserts Fair Labor Standard Act, 29 U.S.C. § 201, et seq.

---

[1] Under that rule "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter . . . on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading." Fed. R. Civ. P. 12(f). Because the pleadings were closed before Defendant filed its motion, and because Defendant is essentially arguing that Plaintiffs' class allegations fail to state claims for which relief may be granted, the Court construes Defendant's motion as brought under Federal Rule of Civil Procedure 12(c) instead. See Fed. R. Civ. P. 12 (c) ("After the pleadings are closed--but early enough not to delay trial—a party may move for judgment on the pleadings."). The Court may not construe Defendant's motion as brought under 12(b)(6) because Defendant answered prior to filing its motion. Fed. R. Civ. P. 12(b)(6) ("A motion [under 12(b)(6)] must be made before pleading ....")

("FLSA"), New Jersey State Wage and Hour Law ("NJWHL"), 34:11-56.1a1, et seq., New Jersey Wage Payment Law ("NJWPL"), N.J.S.A. 34:11-4.1, et seq., and common law breach of contract, unjust enrichment, conversion, and fraud claims.[2]  In addition, Plaintiff Danbury cross-moves for conditional certification of his FLSA overtime claim.  For the reasons set forth herein, the Court will deny Defendant's motion to strike without prejudice for several reasons: (1) it is not clear from Defendant's briefing whether it seeks to dismiss all of Plaintiffs' class allegations or only those related to its FLSA, NJWHL, and NJWPL claims; (2) Defendant failed to address the proper standard for striking FLSA class allegations[3]; and (3) neither party has addressed whether this Court should retain supplemental jurisdiction over the NJWHL, NJWPL, and other state law claims in accordance with the Third Circuit's directive in De Asencio v. Tyson Foods, Inc., 342 F.3d 301, 306 (3d Cir. 2003).  The Court also denies Danbury's cross-motion without prejudice for the reasons expressed herein.

**I.      BACKGROUND**

    **A.     Facts**

---

[2]      Plaintiff White also brings a retaliatory discharge claim under 29 U.S.C.§ 215(a)(3), but that claim does not contain any class allegations and is not related to the instant motions.

[3]      FLSA claims brought on behalf of those similarly situated are referred to as a collective action claims.  See Morisky v. Pub. Svc. Elec. and Gas Co., 111 F.Supp.2d 493, 496 (D.N.J. 2000).  Courts, however, use "collective action" and "class action" interchangeably when referring to such FLSA claims.  I will do the same.

In their Second Amended Complaint, Plaintiffs allege that they were not paid their full wages while employed at Rick Bus. Specifically, Plaintiff White alleges that when she worked as a part-time bus driver for Rick Bus, she was subjected to the practice of "rounding," in violation of FLSA regulation 29 C.F.R. § 785.48(b).[4] Second Am. Compl., ¶¶ 2-4. Plaintiff Smart similarly alleges that, as a part-time bus aide and "standby employee," she was also subjected to rounding. Id. In terms of class allegations, Plaintiffs White and Smart allege that there are other part-time drivers and aides "similarly situated" to them, and that Rick Bus engages in a "policy and practice [of] withholding and/or diverting pay owed to its current and former employees for actual time worked for which its employees are entitled to be paid." Id. at ¶ 3. According to the complaint, this practice not only violates FLSA regulation 29 C.F.R. § 785.48(b) but also gives rise to causes of action under

---

[4] That regulation provides:

> "Rounding" practices. It has been found that in some industries, particularly where time clocks are used, there has been the practice for many years of recording the employees' starting time and stopping time to the nearest 5 minutes, or to the nearest one-tenth or quarter of an hour. Presumably, this arrangement averages out so that the employees are fully compensated for all the time they actually work. For enforcement purposes this practice of computing working time will be accepted, *provided that it is used in such a manner that it will not result, over a period of time, in failure to compensate the employees properly for all the time they have actually worked.*

29 C.F.R. § 785.48(b) (emphasis added).

New Jersey state law.[5]  These state law causes of action include NJWHL and NJWPL statutory claims, as well as common law claims for breach of contract, conversion, fraud and unjust enrichment.

Plaintiff Danbury brings his claim against Rick Bus for failing to pay him overtime wages.  Id. at ¶¶ 1, 6- 7.  Danbury, specifically, alleges that he is a

> former . . . full time bus driver who . . . on behalf of himself, and other similarly situated current and former full time employees of defendant, Rick Bus Company, were routinely required on numerous occasions to work in excess of forty hours per week but were not paid for each additional hour worked in excess of forty hours during any given work week at a rate one and a half times their normal and/or regular rate of pay.

Id. a ¶ 6; see id. at ¶¶ 38-9.  In terms of class composition, he alleges that the class is comprised of "full time bus drivers and full time aides, all who routinely worked forty hours per week and were paid an hourly wage rate ...."  Id. at 40.  Like White and Smart, he asserts that Defendant's policy and practice violates the FLSA, NJWHL, and NJWPL.  He, further, asserts the same New Jersey common law claims as his co-plaintiffs.  In connection with his FLSA claim, he alleges that Rick Bus' actions were willful, and that the FLSA exemption for executive, administrative, or professional employees does not apply.  Id. at ¶ 56.

---

[5]  As noted, Plaintiff White also bring a retaliatory discharge claim under the FLSA.  Because this claim does not contain any class allegations, the Court does not discuss it here.  See Second Am. Compl. at ¶ 122.

In a certification attached to his cross-motion for conditional certification under the FLSA, Danbury asserts that he worked for Rick Bus from 1998 through June 15, 2008, as a full time bus driver. Danbury Cert. at ¶ 3. (Prior to 1998, he worked "several stints" as a part-time driver, with the remaining time as a full-time driver.) Id. He asserts that he "inquired of defendant as to why I have never received any overtime pay and was advised that 'this company does not pay overtime wages." Id. at ¶ 9. See also id. at ¶ 12 (asserting that "when I and the other Full-Time Bus Drivers complained about the discrepancies pertaining to the failure of defendant to pay overtime wages for overtime hours worked, we were all advised that 'if you don't like it, you can find another job."). He, further, contends he is

> aware that none of my co-employees who are or were Full-Time Bus Drivers ever received any overtime pay for the hours that they worked in excess of forty hours during any given work week. I know this information based upon my conversations with them and in many instances, the comparison of our weekly pay checks.

Id. at ¶ 10. Danbury does not identify any of these bus drivers by name and there are no certifications or affidavits from those unnamed sources.

Also by way of certification, Danbury's counsel, Frederick Coles, III, asserts that he has "received in excess of one hundred and thirty unsolicited telephone calls from current and former employees of defendant, Rick Bus Company, who have expressly requested to be joined in this action as a result of defendant's longstanding policies and/or practices of failing to pay these individuals for all of the hours they have worked." Coles Cert. at ¶ 7. Counsel then qualifies this statement: "Admittedly, the claims of some of the individuals

5

with whom I spoke, fall outside of the limitations period for the putative collective class action portion of this litigation as well as under the proposed class action claims pertaining to the common law claims." Id. The certification does not state how many of the one hundred and thirty unsolicited phone callers were full-time bus drivers or aides with overtime claims, as opposed to part-time employees with other sorts of claims. No names or details about the phone callers is provided in Coles' Certification.

### B. Procedural History

Plaintiffs filed the instant action on October 23, 2009. After the Second Amended Complaint and Answer were filed, Defendant moved to strike Plaintiff's class action allegations, arguing solely that the allegations failed to satisfy the dictates of Rule 23. (As noted, it is not clear from Defendant's briefing whether it seeks to strike all of Plaintiffs' class action allegations or only those relating to the FLSA, NJWHL, and NJWPL claims.) Plaintiff opposed Defendant's motion to strike, and filed a cross-motion for conditional certification of Danbury's FLSA claim as a class representative of full-time bus drivers and full-time aides. Plaintiffs have not moved for conditional certification of Plaintiff White's and Smart's collective action claims under the FLSA. For the reasons that follow, both motions are denied without prejudice.

## II. DISCUSSION

### A. Defendant's Motion for Judgment on the Pleadings

As noted, the Court construes Defendant's motion to strike as one under Rule 12(c) for judgment on the pleadings. Similar to the standard for dismissal under Fed. R. Civ. P.

12(b)(6), Rule 12(c) requires the Court to takes all well-pled allegations in the complaint as true and to draw all reasonable inferences in favor of the plaintiff.[6]  Rosenau v. Unifund Corp., 539 F.3d 218, 221 (3d Cir. 2008); Turbe v. Government of Virgin Islands, 938 F.2d 427, 428 (3d Cir. 1991).  Judgment should be granted if the complaint fails to state a claim for which relief may be granted.  Turbe, 938 F.2d at 428 (citing FED. R. CIV. P. 12 (h)(2)).

As an initial matter, it is unclear from Defendant's briefing on its motion to strike whether it seeks to dismiss all or only some of the class allegations.  Its analysis does not distinguish between any of Plaintiffs' claims, but argues solely under Federal Rule of Civil Procedure Rule 23 that Plaintiffs' claims generally should be stricken. Defendant's analysis seems to center on the allegations relating to the FLSA, NJWHL, and NJWPL claims by discussing the overtime and rounding allegations found in the Second Amended Complaint.  Yet, Defendant titles its motion as a "Motion to Dismiss the Class Action Allegations," which suggests that it seeks to dismiss the non-NJWHL and NJWPL claims as well.

---

[6] Some cases describe the Rule 12(c) standard in summary judgment terms. See e.g., DiCarlo v. St. Mary Hosp., 530 F.3d 255, 259 (3d. Cir. 2008) ("Judgment will only be granted where the moving party clearly establishes there are no material issues of fact, and that he or she is entitled to judgment as a matter of law."). However described, the touchstone of the analysis is whether the parties' well-plead allegations can sustain the causes of action alleged. See id. at 262-63 ("The court will accept the complaint's well-pleaded allegations as true, and construe the complaint in the light most favorable to the nonmoving party, but will not accept unsupported conclusory statements."). In contrast to a summary judgment motion, the court may not look outside the pleadings. See Sikirica v. Nationwide Ins. Co., 416 F.3d 214, 220 (3d Cir. 2005).

This failure to distinguish between Plaintiffs' claims is especially problematic with respect to Plaintiffs' FLSA claims because, as explained by the Third Circuit in De Asencio, FLSA collective action claims must be analyzed under 29 U.S.C. § 216(b)'s "similarly situated" standard—not Rule 23. See 342 F.3d at 306. Rule 23 is the standard applicable to state-law based claims, such as Plaintiffs' state statutory and common law claims.[7] Hence Defendant's argument under Rule 23 sheds no light on whether Plaintiffs' FLSA claim should be dismissed.

To be clear, Defendant argues that Plaintiff Danbury cannot meet the FLSA's "similarly situated" test in its opposition to Plaintiff Danbury's cross-motion for conditional certification. But that analysis focuses on the proofs necessary for conditional certification and does not analyze Danbury's (or the other plaintiffs') FLSA allegations under Rule 12(c).[8]

Moreover, De Ascencio directs courts faced with the prospect of dual certification of a FLSA class and a state-law based class to determine, on a case-by-case basis, whether

---

[7] Plaintiffs ultimately seek to certify a class comprised of all three plaintiffs. In their view, the class will consist of two subclasses—one subclass linked to Plaintiffs White and Smart, for part-time bus drivers and aides, and the other to Danbury, for full-time drivers and aides. While the instant motions do not require the Court to rule upon whether such a class could be certified under the FLSA or state law, in light of the different job positions and distinct wage claims asserted in connection with the putative subclasses, the Court expresses its concern that a class of all three plaintiffs would fail the FLSA's similarly situated test and Rule 23's commonality requirement.

[8] This Court's research revealed at least one case in this circuit addressing Rule 12(c) in the FLSA Context—Anchor Motor Freight Drivers Assoc., v. Anchor Motor Freight, Inc., No. 87-115-JJF, 1988 WL 156772 (D.Del. Jan. 31, 1988).

to exercise supplemental jurisdiction over such state law claims. Id. at 312 (explaining nature of the inquiry courts should undertake in deciding whether to exercise supplemental jurisdiction). Neither party has acknowledged or addressed this threshold jurisdictional issue, even though several District of New Jersey opinions have declined to exercise supplemental jurisdiction over Plaintiffs' NJWHL, NJWPL, and common law claims by following De Ascencio's directive. See e.g., Evancho v. Sanofi-Aventis U.S. Inc., Civil Action No. 07-2266, 2007 WL 4546100, (D.N.J. Dec. 19, 2007); Hyman v. WM Financial Services, Inc., No. 06-CV-4038, 2007 WL 1657392 (D.N.J. Jun. 7, 2007) (declining to exercise supplemental jurisdiction over NJWHL, NJWPL, and breach of contract claims); Herring v. Hewitt Assocs., No. 06-267, 2006 WL 2347875, at *2 (D.N.J. Aug. 11, 2006); Himmelman v. Cont'l Cas. Co., No. 06-166, 2006 WL 2347873, at *1 (D.N.J. Aug. 11, 2006).[9] Without briefing on this dispositive issue, the Court cannot consider Defendant's motion to strike the state-law based class allegations.

Accordingly, the Court denies without prejudice Defendant's motion to strike, and grants Defendant leave to re-file its motion in thirty (30) days with briefing addressing: (1) what claims Defendant seeks to strike; (2) to the extent Defendant seeks to strike Plaintiff's FLSA claim, application of Rule 12(c) in the FLSA context; and (3) whether this Court

---

[9] At least one District of New Jersey case has chosen to exercise supplemental jurisdiction in a hybrid FLSA/state-law based wage and hour action, where the plaintiff argued that the state-law based class action allegations could be predicated on jurisdiction under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d) ("CAFA"). See Jackson v. Alpharma Inc., 2008 WL 508664 (D.N.J. Feb. 21, 2008). The Second Amended Complaint, here, contains no similar allegation of jurisdiction under CAFA.

should exercise supplemental jurisdiction over each of Plaintiffs' state law claims. As suggested by the Court's preceding comments, both parties' briefs were inadequate in several respects. When Defendant's motion is re-filed, this Court fully anticipates that those derelictions will be rectified in the parties' briefing.

### B.     Danbury's Cross-Motion for Conditional Certification

#### 1.     Collective FLSA Actions and Conditional Certification

Pursuant to 29 U.S.C. § 216(b), an employee who has been denied overtime compensation may bring an action "for and in behalf of himself or themselves and other employees similarly situated" who were affected by their employer's common policy. Because the term "similarly situated" is not defined in the FLSA, "district courts have developed a test consisting of two stages of analysis." Kronick v. Bebe Stores, Inc., Civil No. 07-4514, 2008 WL 4546368, *1 (D.N.J. Oct. 2, 2008). These two stages consist of a conditional certification and final certification determination. Garcia v. Freedom Mortg. Corp., Civil Action No. 09-2668, 2009 WL 3754070, * 2 (D.N.J. Nov. 2, 2009). See also Ruehl v. Viacom, Inc., 500 F.3d 375, 388 n. 17 (3d Cir. 2007) (recognizing two stage certification process in FLSA cases).

At stage one, the "plaintiff bears the burden of satisfying the similarly situated standard, and if he or she does so, then the court grants conditional certification of the collective action for the purpose of sending notice to the potentially effected employees (or former employees) and conducting discovery concerning the opt-in plaintiffs." Garcia, 2009 WL 3754070 at *2 (quoting Herring, 2007 WL 2121693 at *3-4 (noting a stage one

10

finding "establishes nothing more than the right of the plaintiffs to establish a collective action.")). There is usually minimal evidence before the court at this stage. Thus, in determining whether conditional certification is appropriate, courts examine the pleadings and certifications submitted by the plaintiff. Herring, 2007 WL 2121693 at *5.

Once discovery has been completed and more evidence is available, at the second stage, "the court makes a final determination as to whether the plaintiff is similarly situated to the rest of the class." Garcia, 2009 WL 3754070 at *2 (quoing Kronick, 2008 WL 4546368 at *1). Some courts refer to this process as the reconsideration stage. See e.g., Ruehl, 500 F.3d at 388 n. 17 ("At the reconsideration phase, after potential class members have filed their consents to opt in and after there has been further discovery to support the plaintiffs' allegations, a district court may revoke conditional certification if the proposed class does not meet FLSA's 'similarly situated' requirement.").

### 2. Modest Factual Nexus

In terms of what is required for a stage one determination that potential collective action members are similarly situated, courts in the Third Circuit are divided. Some courts, particularly those in the Western Districts of Pennsylvania, employ the more lenient of the two relaxed standards. Under that case law, "preliminary certification is granted upon a mere *allegation* that the putative class members were injured by a single policy of the defendant employer." Id. (quoting Goldman v. Radio Shack Corp., Civ. A. No. 2:03-CV-0032, 2003 WL 21250571, at *8 (E.D.Pa. 2003)) (emphasis added). In contrast, other courts, including those in the District of New Jersey, "requir[e] the plaintiffs to show a

11

*modest factual nexus* between their situation and that of the proposed class members." Id. (quoting Aquilino v. Home Depot, Inc., Civ. Action No. 04-CV-4100, 2006 WL 2583563 at *2 (D.N.J. 2006)) (emphasis mine); Villanueva-Bazaldua v. Trugreen Lim. Part., 479 F.Supp.2d 411 (D.Del. 2007).

As explained by the district court in Kronick, "courts have increasingly adopted the more rigorous standard, often citing the persuasive reasoning of Smith[v. Sovereign Bancorp, Inc., No. Civ.A. 03-2420, 2003 WL 22701017, *3 (E.D.Pa. Nov. 13, 2003)]:"

> [The substantial allegations standard] is at best, an inefficient and overbroad application of the opt-in system, and at worst it places a substantial and expensive burden on a defendant to provide names and addresses of thousands of employees who would clearly be established as outside the class if the plaintiff were to conduct even minimal class-related discovery. More importantly, automatic preliminary class certification is at odds with the Supreme Court's recommendation to "ascertain the contours of the [§ 216] action at the outset.

Kronick, 2008 WL 4546368, *2. I too find this reasoning persuasive. Thus, like my sister courts here in the District of New Jersey, I will apply the modest factual nexus standard.

By way of illustration, the district court in Dreyer v. Altchem Environ. Svcs., Inc. applied this more rigorous standard to deny conditional certification to a plaintiff who proposed a class consisting of "all present or former employees of the Defendants[ ] who were employed by Defendants [during the three years prior to July 7, 2004], paid by the day and did not receive overtime pay .... " Civil No. 06-2393, 2007 WL 7186177, *1 (D.N.J. Sept. 25, 2007). In addition to his allegations, the plaintiff there submitted his own affidavit and the affidavits of several other employees of the defendant. The court rejected all of the

12

affidavits because they were not based on personal knowledge. For example, the court explained:

> As evidence of an employer policy, Plaintiffs rely on each affiant's statement that "[t]o the best of my information and belief, everyone I worked with was paid the same way and treated the same away [sic]" and posit that if [Defendant] paid three of its employees the same way, then it must have had a policy affecting all its hourly employees.

Id. at *4. The court went on to explain: "Such assumptions might be tenable if the affiants had presented any amount of detail to bolster their assertions." Id. But, the court continued, "the affiants state only 'my overtime was paid at a lower rate than the average wage of different rates I worked each week' and '[m]any times I worked through lunch was [sic] not counted towards my overtime hours." Id. Characterizing these statements as "unsubstantiated assertions," the court held that they did not demonstrate a modest factual nexus. Id. Plaintiffs who rely on affidavits or certifications with similarly sparse factual support have faced rejection in other courts as well. See e.g., Krstic v. J.R. Contr. & Environ. Consul., Civil Action No. 09-CV-2459, 2010 WL 395953 (D.N.J. Feb. 4, 2010) (denying conditional certification where complaint failed to allege dates, job functions, or employee descriptions relating to plaintiff's overtime FLSA claim); Kronick, 2008 WL 4546368 at *2 ("Such general and vague assertions might be tenable if Plaintiff affiants had presented more detailed factual evidence to bolster their assertions.").

On the other end of the spectrum are Garcia and Bouder. In contrast to the evidence presented in Dreyer, the Garcia plaintiffs submitted eight affidavits detailing "their on the job duties, the over 40-hours worked in a week, particularly at the end of the month,

supervisors' awareness of these extra hours worked and finally lack of compensation for overtime." 2009 WL 3754070 at *3. In terms of personal knowledge, "[e]ach Plaintiff stated they knew these facts based upon their own personal observations of both themselves and their co-workers ...." In Boulder, the plaintiff presented his own testimony that he worked between forty-five and seventy hours per week without overtime compensation. Bouder v. Prudential Financial, Inc., Civil Action No. 06-CV-4359, 2008 WL 7898281, *1 (D.N.J., Mar. 27, 2008). The plaintiff, further, presented deposition testimony from the defendant's compensation director, who testified that there was no significant difference between the plaintiff's position and the position of the other employees whom he sought to include in the collective action. Thus, the court concluded, the plaintiff demonstrated a modest factual nexus and was entitled to class certification. Id. at *4.[10] Accord Stillman v. Staples, Inc., Civil Action No. 07-849, 2008 WL 1843998, *4 (D.N.J. Apr. 22, 2008) (granting conditional certification where the plaintiff presented over fifteen deposition transcripts, affidavits, declarations, and documents to show that they were similarly situated to other co-workers employed by the defendant).

Here, Danbury has failed to demonstrate a modest factual nexus between himself and putative class members. As an initial matter, the Court notes the paucity of Danbury's allegations. In his Second Amended Complaint, he has provided mere generalizations and legal conclusions. He has not put forth any relevant facts for the Court to consider, such

---

[10]   There is no discussion in this opinion about whether the defendant had a company-wide policy to deny overtime pay.

as the names of any similarly situated employees, the years in which those employees worked, or Rick Bus job descriptions for full-time bus drivers/full-time aides. These basic facts are readily ascertainable at the pleading stage before discovery, and their absence is noticeable.

Danbury's Certification is likewise unhelpful because it contains the same sort of blanket assertions without factual matter and, in any event, is based on hearsay. In his certification, he asserts that his conclusory statement that other similarly situated employees were denied overtime is "based upon my conversations with them and in many instances, the comparison of our weekly pay checks." Danbury Cert. at ¶ 10. On conditional certification motions, just as with summary judgment motions, courts do not consider evidence that is inadmissible. See Dreyer, 2007 WL 7186177 at *3.[11] For that reason, the Court may not rely on Danbury's Certification here, which is deficient in content in any event. Likewise, Coles' Certification is based on hearsay because he recounts comments from putative class members as opposed to presenting certifications or affidavits from the individuals with whom he spoke.

Danbury suggests that additional detail is not required at this stage because he asserts a simple overtime claim. Pl. Reply at 3 (describing his claim "as not . . . complex"). This argument misses the mark. The modest factual nexus standard requires a showing

---

[11] In this connection, Defendant argues that Danbury may not rely upon an unsworn certification in support of a motion. Defendant is wrong on this point. As long as a certification states it is made "under penalty or perjury, and [is] dated," it may be considered by a federal court. 28 U.S.C. § 1746; Dreyer, 2007 WL 7186177, *3 n. 3. See also Brokenbaugh v. Exel Logistics North America, Inc., 174 Fed.Appx. 39, 43 n.2 (3d Cir. 2006).

that Danbury and other Rick Bus employees are similarly situated, and that they were affected by Rick Bus' common policy of withholding overtime pay. His allegations and proofs fall short of this mandate. Accordingly, the Court concludes that Plaintiff Danbury has not demonstrated the modest factual nexus necessary to justify conditional class certification.[12] To be clear, the Court is not dismissing Danbury's individual FLSA claim, but denies only his cross-motion for conditional certification.

## III. CONCLUSION

For the foregoing reasons, Defendant's motion for judgment on Plaintiffs' class action allegations is denied without prejudice. Defendant is granted leave to re-file its motion in thirty (30) days to address: (1) what claims Defendant seeks to have judgment rendered upon, with respect to the class allegations; (2) to the extent Defendant seeks judgment on Plaintiff's FLSA collective action claim, application of Rule 12(c) in the FLSA context; and (3) whether this Court should exercise supplemental jurisdiction over each of Plaintiffs' state law claims involving class allegations; in accordance with DeAscencio,

---

[12] Defendant additionally argues that there exists a possibility that the putative class members may be considered exempt from FLSA's overtime regulations and that proofs relating to this issue would vary amongst each class member. Because the Court holds that Danbury has failed to demonstrate that he is similarly situated to other employees, the Court need not reach Defendant's argument. Were the Court to reach that argument, the Court would reject it because the case upon which Defendant relies, Morisky, is not a conditional certification case. See 111 F.Supp.2d at 497 (noting that the case was "clearly beyond the first tier of the [certification] analysis, as over 100 potential plaintiffs ha[d] already opted into th[e] lawsuit."). The exempt status defense is typically heard at the second stage of certification where a full factual record has been developed. See Stillman, 2008 WL 1843998 at * 3, n.15.

supra. Plaintiff Danbury's cross-motion for conditional certification is denied without prejudice. An appropriate Order will follow.

/s/ Freda L. Wolfson
Freda L. Wolfson, U.S.D.J.

Dated:   September 28, 2010